UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO WILLIAMS,

                Petitioner,

                                                     Case Number 11-15163
v.                                             Honorable David M. Lawson
                                             Magistrate Judge Paul J. Komives

WILLIE SMITH,

                Respondent.

_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, OVERRULING PETITIONER'S OBJECTIONS,
AND DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Before the Court are the petitioner's objections to a report issued by Magistrate Judge Paul

J. Komives recommending that petitioner Angelo S. Williams's petition for a writ of habeas corpus

be denied.  Williams was convicted by a Jackson County, Michigan jury of conducting a criminal

enterprise, filing a false income tax return, and four counts of obtaining money by false pretenses.

He is currently serving a prison sentence for those crimes.  He filed his habeas corpus petition *pro*

*se*, but since has obtained counsel, who filed objections to Judge Komives's report and

recommendation.  The Court has conducted a *de novo* review of the petition, response, and state

court record and agrees with the magistrate judge's conclusions.  Therefore, the Court will overrule

the objections, adopt the magistrate judge's recommendation, and deny the petition.

I.

       The case focuses on Williams's real estate activity from 2006 through 2008.  The State

alleged that Williams bought residences from third parties, caused phony construction liens to be

recorded against the properties that supposedly inflated their value, negotiated a sale price with a

different party for the bloated value, arranged for financing from financial institutions, provided

false information about the buyers to the lenders, and then pocketed the money when the loan proceeds were released. The lenders, however, sold the loans sometime thereafter, and therefore never felt the sting of their misbegotten lending practices or Williams's fraud. Williams argued to the state court, and now here, that the State failed to prove the elements of the false pretense charges (and therefore also the criminal enterprise count) because there was no proof of a victim who suffered an actual loss.

The magistrate judge and the state court of appeals summarized the facts perfunctorily. To address that claim and the petitioner's objections to the magistrate judge's report and recommendation, a more detailed discussion of the record is in order.

Williams owned and operated 4A Home Mortgage Services, a mortgage brokerage in Jackson, Michigan. He was also the Jackson branch manager for Van Dyke Mortgage Corporation. In 2006, Williams, through 4A, purchased a home at 1041 Maple Street in Jackson (the "Maple property") from Kay and John Minori. Williams and the Minoris initially drew up a handwritten agreement of sale, which the Minoris signed. Williams then took the document, ostensibly for the purpose of formatting it more professionally. Kay Minori signed the reformatted agreement, selling the Maple property to the petitioner for approximately $33,000. At the time of sale, and unbeknownst to the Minoris, Williams had recorded a construction lien on the Maple property in the amount of $63,000, claiming that 4A had contracted to do work on the property. At no time had the Minoris contracted with Williams or 4A to perform any such work. The Minoris later returned to the Maple property and found that minor work had been done on the house.

At this point, Williams arranged to transfer ownership of the Maple property to John Gunn, using a purchase agreement purportedly between Gunn and the Minoris. The purchase agreement

was prepared by 4A and listed the purchase price as $96,000.  Gunn testified that this transaction was part of a plan between Williams and Gunn wherein Gunn would purchase the properties and Williams would manage them.  However, Gunn had no knowledge of Williams's original purchase from the Minoris, the price of that purchase, or the lien that Williams had placed on the property.  Gunn believed he was purchasing the Maple property for $96,000.

After Gunn signed the second purchase agreement, 4A prepared a loan application for the Maple property.  Gunn provided Williams with the necessary financial information to complete the application.  However, the loan application that was submitted contained information different from that which Gunn had provided — Gunn's income, the amount of money in Gunn's bank account, and the amount of money paid by the borrower for the property were incorrect.  In fact, Gunn never paid any money for the Maple property.  Additionally, 4A never disclosed its lien on the Maple property to the lender.  On the basis of the false information in the application, 4A was able to obtain a loan in the amount of $86,400.  A representative of the mortgage underwriter testified that had they been given the correct financial information or informed of the lien they would not have approved the loan.  The underwriter later sold the loan to another company.

In April 2007, 4A rented the Maple property to Joseph Halsey, who testified that Williams was his landlord.  For seven months, Halsey and his family lived in the house and paid rent every month.  In the seventh month, however, Halsey was informed that the house was being foreclosed.  Halsey attempted to contact Williams, who, after a two-week delay assured Halsey that the situation would be handled.  Despite this reassurance, the house was in fact foreclosed and Halsey was forced to leave the Maple property in August 2008.

-3-

In addition to the Maple property, the petitioner and Gunn engaged in similar sales for two other properties in Jackson: one at 1415 Teneyck and one at 311 Euclid. He worked a slightly different scheme for property located at 1202 South Jackson Road. In each of those transactions, loans were made based on Williams's representations.

The procedural history of the case in state court was set out clearly by the magistrate judge and need not be repeated here. The appellate issues Williams raised in the Michigan Court of Appeals through counsel provide the basis for his *pro se* habeas petition. Those claims are:

> I.   Due process requires proximate causation and the false pretenses statute additionally requires a loss to the victim of a specified dollar value. In this case, the purported victims testified that they suffered no financial loss at all in the transaction, and the trial court, in denying a directed verdict, relied on a generalized detrimental reliance and "fraud on the marketplace" theory. Where there was no proof of loss, and no proof of proximate causation, was the evidence constitutionally insufficient to sustain the convictions for false pretenses and conducting a criminal enterprise?
>
> II.  Is Defendant entitled to a new trial because the trial court, in response to a jury question about the absence of a victim in the case, gave an erroneous supplemental instruction that misstated the law and tended to direct a verdict of guilty, contrary to Defendant's due process and Sixth Amendment rights?
>
> III. The trial court reversibly erred by denying Defendant's request for instruction on the lesser included offense of false pretenses under two hundred dollars.
>
> IV.  Is Defendant entitled to reversal of his conviction where he was not arraigned on the information as part of a system-wide procedure in Jackson County that has eliminated circuit court arraignments?
>
> V.   Is Defendant entitled to a resentencing because OV 9 and OV 16 were mis-scored where there were no identifiable victims and no loss?

Ptn. at 23-24. The magistrate judge rejected each of these arguments in turn. The petitioner, through counsel, filed timely objections to the recommended disposition of the sufficiency of evidence issue, the jury instruction issue, and the sentencing issue. The petitioner did not object to the recommendation's treatment of the lesser offense and arraignment issues.

-4-

II.

Objections to a magistrate judge's report and recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge . . . may accept, reject, or modify, in whole or in part, the findings to which objection is made." 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

A.

The magistrate judge applied the deferential review standard mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 785-86 (2011) (holding that the AEDPA requires a federal habeas court to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's ruling." (quoting

-5-

*Yarborough v. Alvarado*, 541 U.S. 652 (2004))). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012).

The petitioner has not questioned the application of that standard in this case.

B.

Addressing the first claim, the magistrate judge acknowledged that "federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, --- U.S. ---, 132 S. Ct. 2060, 2064 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)). He suggested that in Michigan, the crime of larceny by false pretenses has four elements: 1) a false representation as to an existing fact, 2) knowledge by the defendant of the falsity of the representation, 3) use of the false representation with an intent to deceive, and 4) detrimental reliance by the victim on the false representation. *See People v. Webbs*, 263 Mich. App. 531, 532 n.1, 689 N.W.2d 163, 164 n.1 (2004) (quoting *People v. Flaherty*, 165 Mich. App. 1139, 119, 418 N.W.2d 695, 697 (1987)). The magistrate judge rejected the petitioner's argument that the prosecution failed to present evidence of an identifiable victim, proximate causation, and loss, because he believed that Michigan courts had determined that the false pretenses statute requires neither proof of an actual loss nor a permanent deprivation. Determining what is required to prove the elements of a crime beyond a reasonable doubt is a matter for state law. *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002).

-6-

The magistrate judge viewed the petitioner's argument as a disagreement with the state courts about what constitute the elements of the offense, and therefore concluded that the claim is not cognizable on habeas review. He agreed with the state appeals court's interpretation of the statute, finding no support for the petitioner's reading. Moreover, the magistrate judge suggested that the prosecution presented sufficient evidence both of the elements of the offense and the amount of loss to sustain the conviction.

The petitioner objected to that part of the report, arguing that although the substantive elements of the crime are defined by state law, the evidence necessary to establish those elements is a federal concern. He acknowledges that the elements of the offense of false pretenses established by Michigan law are: 1) a false representation as to an existing fact, 2) knowledge by the accused of the falsity of the representation, 3) use of the false representation with an intent to deceive, and 4) detrimental reliance on the false representation by the victim. But he insists that there was no evidence of detrimental reliance presented at trial; rather, he says, witness testimony established that the mortgage companies profited from the sale of the mortgages to other parties.

The petitioner also points out that the enhanced penalty that is triggered by the loss value of $20,000 requires proof of additional elements. He says that the State must show also that 5) because of the detrimental reliance the person suffered the loss of some money or other valuable thing, and 6) the property must have had a fair market value of $20,000 but less than $50,000 at the time of the crime. *See People v. Lueth*, 253 Mich. App. 670, 680-81, 660 N.W.2d 322 (2002)). The petitioner argues that no witnesses testified to sustaining a loss of between $20,000 and $50,000, and emphasizes that the space in the complaint reserved for the complainant's name was blank for the

-7-

duration of the trial.  The petitioner contends that the trial record thus does not support the court's finding that later investors had suffered a loss.

The Michigan Court of Appeals rejected these same arguments as "at best, disingenuous." *People v. Williams*, No. 296211, 300294, 2011 WL 2586291, *2 (Mich. Ct. App. June 30, 2011). That court held that the element of detrimental reliance is satisfied by proof that the lending institutions would not have made the loans had they known that the petitioner's representations were false.  That court also held that the loan proceeds exceeded $20,000 in each instance, so the loss value element was satisfied.  The court determined that the mortgage companies' later recoupment of the loan amounts when they factored the loans did not vitiate the petitioner's fraud.  In other words, the state court concluded that the false pretense crimes were complete when the mortgage companies parted with their money.  *Ibid.*

No federal constitutional error can be found in that ruling.  The state court, interpreting a Michigan statute, determined that the crime of false pretenses did not require proof of "a *permanent* deprivation." *Id.* at *3.  The petitioner protests, but on habeas review, "'[s]tate law means what state courts say it means.  A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.'" *Sanford*, 288 F.3d at 860 (quoting *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991)).  The state court concluded that detrimental reliance had been established when the mortgage companies funded the loans based on the petitioner's representations, and later recoupment of the loss when the loans were sold was irrelevant to whether a loss had occurred in the first place.  The evidence plainly established that the petitioner's misrepresentations prompted the bankers to make the loans, and the petitioner does not suggest otherwise.  The state court held that detrimental reliance thereby was proven.  "'What is essential

-8-

to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford*, 288 F.3d at 862 (quoting *Bates*, 934 F.2d at 103). The same can be said for proof of the amount of the loss and the identity of the victim: the crime was complete when the mortgage companies (i.e., the "victim") funded the loans that were in excess of $210,000. The magistrate judge was correct, therefore, when he suggested that federal habeas relief is unavailable to the petitioner on that claim. The Court so concludes as well.

## C.

The same fate befalls the petitioner's jury instruction claims. The first argument is that the trial court's clarifying instructions were erroneous because they misdefined the concept of detrimental reliance. The trial court gave a supplemental instruction in response to a jury question requesting clarification on which parties to classify as the victims and what constituted the loss. The trial court's instruction, given over the petitioner's objection, was as follows:

> I further instruct you that if you find that a loan of money was made by the mortgage lenders because they relied upon false pretenses — pretense intentionally made by the defendant, and, if you find that the loan of money would not have been made if the mortgage lenders had known the information was false, then you may find but are not required to find that such a loan constitutes detrimental reliance by the mortgage lenders for purpose of false pretenses, and the mortgage lenders who so relied upon the false pretense are victims of the false — the false pretenses.

Tr. Nov. 9, 2009, at 14. The state court held that this instruction did not misstate the law. That conclusion tracks the holding on proof of the statutory elements of the offense. The petitioner's beef is based entirely on the interpretation of state law. Federal habeas review is generally not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In order for incorrect jury instructions to warrant federal habeas relief, the instructions must be so grossly erroneous as to render the trial fundamentally unfair. *Id.* at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977);

*Wood v. Marshall*, 790 F.2d 548, 551 (6th Cir. 1986); *United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995). The record discloses no such error.

Second, the petitioner argues that the trial court should have instructed the jury on the lesser included offense of false pretenses under $200. The petitioner's theory is that the evidence supported such an instruction because the mortgage company's recoupment of the loss through factoring the loans was relevant to the statutory loss amount. His claim fails because the state law premise of his argument is unsupportable. The crime was complete when the loans — which exceeded $20,000 — were funded. The claim also fails because a state court's failure to instruct the jury on a lesser included offense in a noncapital criminal case is not such a "fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]" *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir.) (en banc); *see also Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).

D.

The petitioner also contends that the trial court sentenced him in error by relying on judge-found facts, in violation of his right to a jury trial. The trial court, he says, made factual determinations concerning the victims and the loss amounts when scoring the state sentencing guidelines. Those determinations raised the floor of the mandatory state guidelines.

The petitioner acknowledged that prior circuit law foreclosed that argument. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] by finding facts that raised his minimum sentence. But *Harris v. United States*[, 536 U.S. 545 (2002)] tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does

-10-

not exceed the applicable statutory maximum.").   However, he asked the Court to delay its disposition of the petition until after the Supreme Court decided *Alleyne v. United States*, in which *certiorari* was granted to considered the constitutionality of allowing a judge, not a jury, to determine facts that increase a mandatory minimum sentence.  --- U.S. ---, 133 S. Ct. 420 (2012).

     *Alleyne* was decided on June 17, 2013.  --- U.S. ---, 133 S. Ct. 2151.  The Court overruled *Harris* and held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt.   Mandatory minimum sentences increase the penalty for a crime.   It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."  *Id.* at 5155 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 483, n.10, 490 (2000)).

     Michigan uses an indeterminate sentencing scheme for custodial sentences in which the maximum sentence is set by the statute that defines the crime and the sentencing court sets a minimum term of imprisonment that may be as long as two-thirds of the statutory maximum sentence.  *See* Mich. Comp. Laws § 769.34(2)(b); *People v. Babcock*, 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (citing *People v. Tanner*, 387 Mich. 683, 690, 199 N.W.2d 202 (1972)). However, the sentencing court is obliged to set the minimum term as dictated by the statutory sentencing guideline scheme, which is driven by a scoring system based largely on judge-found facts.  *See* Mich. Comp. Laws § 769.34(2); *People v. Drohan*, 475 Mich. 140, 161, 715 N.W.2d 778, 790 (2006).

     Because the mandated minimum sentence under Michigan's sentencing system is based on judge-found facts, the Supreme Court's decision in *Alleyne* casts the continuing validity of *Chontos*

-11-

*v. Berghuis* into doubt. But that does not matter here. The writ of habeas corpus upsetting a state court conviction may issue only if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). "The law in question must have been clearly established at the time the state-court decision became final, not after." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 380 (2000)). Therefore, even if *Alleyne* requires a result different than *Chontos*, the state court's decision was not contrary to federal law clearly established by the United States Supreme Court at the time of the sentencing decision. *See* 28 U.S.C. § 2254(d).

Williams is not entitled to habeas relief on his sentencing claim.

E.

Williams also raised claims in his petition alleging a defect in the arraignment process and the misscoring of the sentencing guideline variables under state law which the magistrate judge rejected. The petitioner did not object to that part of the report and recommendation. The failure to file objections to the report and recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to an unfavorable portion of the magistrate judge's report releases the Court from its duty to independently review the issue. *Thomas v. Arn*, 474 U.S. 140, 152 (1985); *see also Cephas v. Nash*, 328 F.3d 98, 1078 (2d Cir. 2003) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."); *Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002) ("As to the parts of the report and recommendation to which no party has objected, the Court need not conduct a review by any standard.").

-12-

III.

The Court agrees with the magistrate judge's statements of the law and his analysis.  The Court concludes that the petitioner is not in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's report and recommendation [dkt #11] are **OVERRULED**.

It is further **ORDERED** that the report and recommendation [dkt #10] is **ADOPTED**.

It is further **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 18, 2014

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 18, 2014.

s/Shawntel Jackson
SHAWNTEL JACKSON

-13-